IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

NICOLE POWELL,                  §
                                §
            Plaintiff,          §
                                § Civil Action No. 3:06-CV-1994-D
VS.                             §
                                §
MICHAEL J. ASTRUE,              §
COMMISSIONER OF SOCIAL          §
SECURITY,                       §
                                §
            Defendant.          §

MEMORANDUM OPINION

Plaintiff Nicole Powell ("Powell") brings this action under § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability and supplemental security income benefits under Titles II and XVI of the Act. For the reasons that follow, the court REVERSES the decision of the Commissioner and REMANDS this case for further proceedings.

I

Powell applied for disability and supplemental security income benefits in the fall of 2003. She was born November 8, 1979, has a high school diploma, but is of borderline intelligence and is functionally illiterate. R. 18, 49. She initially alleged that she had been unable to work for the past year as the result of a skin condition. R. 49, 57-58. Powell allegedly suffers from psoriasis, obesity, chronic headaches, chronic pain, arthralgia,

and major depressive disorder. After a hearing before an administrative law judge ("ALJ"), the Commissioner denied Powell's claims for benefits. Based on the record evidence, Powell's testimony, the Medical-Vocational Guidelines, and the testimony of a vocational expert, the ALJ concluded at the fifth step of the five-step sequential analytical process that Powell was not disabled within the meaning of the Act because she retained the residual functional capacity ("RFC") to perform a significant range of light unskilled work that did not require literacy. R. 18-20. The Appeals Council denied Powell's request for review of the ALJ's decision, and the decision became final. R. 4. Powell now seeks judicial review.

II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnote omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)). "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983)). Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for this court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability"

means an inability to engage in substantial gainful activity because of any medically determinable physical or mental impairment or combination of impairments that could be expected either to result in death or to last for a continuous period of not fewer than 12 months. 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner uses a five-step sequential inquiry. *Leggett*, 67 F.3d at 563; *Martinez*, 64 F.3d at 173-74. The Commissioner must consider whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in Appendix 1, Subpart P, Regulation No. 4; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *Leggett*, 67 F.3d at 563 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520 (2007). "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)). At step five, once the Commissioner demonstrates that other jobs are available to a claimant, the burden of proof shifts to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (per curiam).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)).

"The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557. "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified." *Id.* Reversal of the ALJ's decision is appropriate, however, "only if the applicant shows that he was prejudiced." *Id.* The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced. *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

III

Powell contends the ALJ erred in finding at step five of the sequential analysis that she could perform light unskilled work, because he based his RFC determination solely on a physical RFC

assessment form.  In pertinent part,[1] Powell argues that the ALJ improperly rejected the only mental RFC assessment in the record: an August 19, 2005 Medical Assessment of Ability to do Work-Related Activities (Mental), completed by Florence Ouseph, M.D. ("Dr. Ouseph").  She contends that the ALJ made no findings concerning her depression, that he otherwise failed to develop the case adequately by ordering a mental consultative exam, and that he violated the mandatory requirement of 20 C.F.R. § 404.1520a (2007) that he evaluate her mental impairments.

Powell also posits that, if the court determines that the ALJ's RFC assessment in fact evaluated her mental condition, the court should still remand this case for additional development. Citing requirements established in *Ripley*, 67 F.3d at 557, she argues that the ALJ is not entitled to make an RFC assessment in vacuum, that instead of requesting a medical source statement, the ALJ relied on "raw medical evidence," P. Br. 6, that the ALJ was required to develop testimony or evidence that showed the types of work she could perform, that the normal practice is to order a psychological consultative exam, and that she supplied the ALJ the information contained in such a form, but he rejected it.

Powell also contends that the ALJ had a duty to develop the facts relevant to her claim and a basic obligation to develop the

---

[1] Powell relies on other arguments to establish that the Commissioner's decision should be reversed.  Because the court need not reach them, it will not recount them.

record fully and fairly, that the ALJ either should have accepted her treating physician's evidence or should have ordered a psychological consultative exam, and that the case should be remanded so that the ALJ can comply with 20 C.F.R. § 404.1520a and either obtain such an exam or accept the one already in the record.

The Commissioner responds that the ALJ carefully considered Powell's claim of depression as well as evidence of her failure to take her treatment seriously, her work history, and descriptive medical findings; the objective evidence concerning Powell's mental condition did not suggest disability under the Act, but rather suggested borderline intellectual functioning and functional illiteracy; and that the ALJ properly rejected the mental assessment performed by Dr. Ouseph, because it is conclusory, and was not clearly obtained from a treating physician, and therefore not subject to the requirements of 20 C.F.R. § 404.1527(d). The Commissioner also contends that the absence in the record of an independent medical source statement of Powell's mental condition does not render the record incomplete,[2] and any alleged failure by the ALJ to develop the record adequately is reversible only on a showing of prejudice, and that the ALJ properly found that Powell's subjective complaints of pain and limitation were not consistent

---

[2]The Commissioner relies on *Ripley*, 67 F.3d at 557 (holding that "[u]sually, the ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing. The absence of such a statement, however, does not, in itself, make the record incomplete." (footnote omitted)).

with the record, given her treatment history, response to treatments, objective mental status findings, and consistent failure to seek freely available treatment.

Powell replies, *inter alia*, that Dr. Ouseph's assessment is evidence of prejudicial error because it establishes that additional evidence would have been produced——had the ALJ properly developed the record——that might have led to a different conclusion. She also maintains that the ALJ's failure to make clear, explicit findings regarding the severity of her depression is reversible error, because absent such findings, the court cannot determine whether the ALJ considered her depression at every step in the sequential analysis.

IV

A

The court considers first whether the ALJ properly rejected Dr. Ouseph's report.

Powell's principal objection is that the ALJ failed to consider the six factors set forth in 20 C.F.R. § 404.1527(d)(2) that must be addressed before the ALJ rejects the opinion of a treating medical source. The record establishes that the ALJ rejected Dr. Ouseph's report, at least in part, because there was insufficient record evidence that Dr. Ouseph had a treating relationship with Powell. R. 17. The ALJ did not apply 20 C.F.R. § 404.1527(d), but instead stated that "in [this] case we do not

know whether there is a doctor/patient relationship or the basis for the statement." *Id.* The ALJ also concluded that "absent any supporting documentation or even a diagnosis, I cannot evaluate the authenticity and thus must give no weight to this document." *Id.* The Commissioner points out, *inter alia*, that 20 C.F.R. § 404.1527(d)(2) does not apply to the opinions of non-treating physicians.

Section 404.1527(d)(2) sets forth factors that an ALJ must consider before rejecting a treating physician's opinion. The "ALJ may reject the opinion of the *treating physician only* if the ALJ performs a detailed analysis of the *treating physician's* views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) (some emphasis added). Here, the ALJ explicitly stated that he was unable to determine whether Powell and Dr. Ouseph had a doctor-patient relationship, ascertain the basis of Dr. Ouseph's statement, or determine its authenticity. The court holds that the ALJ was not required under these circumstances to assess the purported medical opinion under the six factors set forth in § 404.1527(d)(2), and that he did not err in rejecting Dr. Ouseph's report.[3] The ALJ is not required to perform the six-factor analysis on any document that purports to be a medical source opinion from a treating

---

[3]Powell does not present any additional arguments relating to the propriety of the ALJ's rejection of Dr. Ouseph's report.

physician; it only applies to those opinions that are actually determined to be treating source opinions.

B

The court considers second whether—in view of the fact that the ALJ rejected Dr. Ouseph's report—the ALJ failed to fully and fairly develop the record concerning Powell's alleged depression.

The Commissioner's decision that Powell's alleged depression does not prevent her from working is essentially based on (1) raw medical evidence contained in the records of the mental health mental retardation ("MHMR") clinic, (2) Powell's own testimony, which the ALJ found not to be credible, and (3) her failure to seek continuing treatment for the condition.[4] Powell contends that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to fully and fairly develop the record concerning her depression. Specifically, she posits that the ALJ should either have accepted Dr. Ouseph's report or ordered a psychological consultative exam at government expense and a medical source statement describing the types of work Powell is capable of performing.

Having considered the record, the court concludes that the ALJ

---

[4]The Commissioner suggests that the evidence shows that Powell has successfully worked full-time with depression for several years in the past. But the court is unable to conclude that the ALJ actually relied on this fact in reaching his decision. Moreover, this position is undermined by the fact that there is insufficient evidence in the record regarding the severity of Powell's depression at the time she stopped working.

did not meet his burden of fully and fairly developing the record concerning Powell's mental condition, and that this error is prejudicial and reversible. The ALJ relied, *inter alia*, on essentially raw data in MHMR records that describe Powell's initial examination by MHMR in September 2004, show various descriptive medical findings, and reflect a diagnosis of major depressive disorder. R. 17. But there is no medical source opinion in the record that documents the adverse effects, if any, of Powell's mental impairments on her ability to work. "A valid residual functional capacity must be supported by more than an administrative law judge's lay assessment of raw medical evidence." *Bodin v. Barnhart*, 2004 WL 3237480, at *4 (E.D. Tex. Aug. 11, 2004). An adequate evidentiary record should generally contain "(1) a medical source's opinion; (2) the opinion must address effects of impairments on ability to work; and (3) the opinion must be supported by specific evidentiary facts and an explanation providing a basis or justification for the opinion." *Id.; see also Ripley*, 67 F.3d at 557-58. Apart from Dr. Ouseph's report, the administrative record only contains an MHMR record that does not address the effects of Powell's depression on her ability to work, and the ALJ's decision is not otherwise based on substantial evidence. The ALJ was obligated to develop the record properly with respect to Powell's alleged mental impairment.

The court recognizes that "[t]he absence of [a medical source

statement describing the types of work that the applicant is still capable of performing]. . . does not, in itself, make the record incomplete." *Ripley*, 67 F.3d at 557. But in this case, as in *Ripley*, the record reflects that Powell suffered from major depressive disorder, and yet the record does not establish the effect *vel non* of such depression on Powell's ability to perform work. *See id*. At most, insofar as the record relates to Powell's alleged depression, it shows that Powell sought initial treatment for depression but did not seek ongoing treatment.[5]

The court also recognizes that the ALJ's failure to develop the record fully and fairly is reversible only if Powell shows prejudice. *See id.* (citing *Kane*, 731 F.2d at 1220). As noted, "[p]rejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Id.* at 557 n.22 (citing *Kane*, 731 F.2d at 1220). Powell argues that Dr. Ouseph's report is itself sufficient to demonstrate that additional evidence would have been produced had the ALJ fully developed the record, and that the additional evidence might have led to a different conclusion. The court

---

[5]The Commissioner found Powell's testimony concerning the effect of her depression on her ability to perform work to be not credible, principally based on her failure to seek ongoing treatment for her condition. This does not, however, constitute substantial evidence. *See Ripley*, 67 F.3d at 557 (remanding where "the only evidence regarding [the applicant's] ability to work came from [the applicant's] own testimony.")

agrees. Although Powell has not shown that the ALJ improperly rejected Dr. Ouseph's report, Dr. Ouseph found, *inter alia*, that Powell has poor or no ability to "[r]elate to co-workers," "[d]eal with the public," "[f]unction independently," or "maintain attention/concentration." R. 171-72. Moreover, the medical evidence from the MHMR report contains the diagnosis that, on September 21, 2004, Powell suffered from recurrent "MDD [major depressive disorder], recurrent, severe, without psychotic features." R. 160. The court therefore concludes that additional evidence relating to the effects, if any, of her depression on her ability to work would have been produced had the ALJ properly developed the record, and that such evidence might have led to the conclusion that Powell is disabled. The error is therefore prejudicial.

\* \* \*

Accordingly, the Commissioner's decision is REVERSED, and this matter is REMANDED for further proceedings consistent with this memorandum opinion.

August 31, 2007.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE